**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ALCODIO OVENIEL MONROY-CASTILLO, *et al.*,

Petitioners,

v.

TODD BLANCHE, *et al*.,

Respondents.

Case No. 2:26-cv-02502-RFB-EJY

**ORDER GRANTING WRITS OF HABEAS CORPUS**

Before the Court is a Joint Petition for Writs of Habeas Corpus by Alcodio Oveniel Monroy-Castillo, Domingo Antonio Vilorio Hernandez, Nancy Alitzel Maynard Miranda, Allan Yoel Galaviz-Najera, and Adolfo Lopez-Macias (ECF No. 1). Petitioners challenge the lawfulness of their ongoing detention in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Petitioners argue their ongoing detention is unlawful under (i.) Jacobo-Ramirez v. Mullin, --- F. Supp. 3d ---, 2026 WL 879799 (D. Nev. Mar. 30, 2026); (ii.) the Immigration and Nationality Act ("INA"); and (iii.) the Due Process Clause of the Fifth Amendment. For the following reasons, the Court grants the Petition, awards Petitioners writs of habeas corpus, and orders Respondents to immediately release them from ICE custody.

## I. FINDINGS OF FACT

The Court makes the following findings of fact based on the Parties' factual allegations in the existing record before the Court, and the evidence they supply. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950).

a. *Petitioner Monroy-Castillo*

The Court finds that Petitioner Monroy-Castillo is a member of the Jacobo-Ramirez Class.[1] Petitioner Monroy-Castillo has set forth sufficient, undisputed facts indicating Class membership. See Pet'rs' Joint Pet. for Writ of Habeas Corpus for Class Members 7–8, ECF No. 1 (Aug. 12, 2026) [hereinafter, "Joint Pet."]. Meanwhile, rather than citing a statutory provision or authority that pertains to each Petitioner as this Court ordered, see Screening Order 3, ECF No. 5 (Aug. 13, 2026) [hereinafter, "OSC"] (requiring Respondents to file a response "identify[ing] the statutory provision that authorizes *each* Petitioner's detention" and "*explain why that provision applies*") (emphasis added), Federal Respondents merely state that Petitioner is not a Class Member because he has a final order of removal. See Fed. Resp'ts' Notice Regarding Class Membership 2, ECF No. 9 (Aug. 19, 2026) [hereinafter, "Opp'n"]. However, Federal Respondents' fail to acknowledge, let alone adequately respond to, Petitioner's (i.) appeal of said removal order and (ii.) rightful argument that such appeal renders the order of removal non-final. See Joint Pet. at 7–8; 8 U.S.C. § 1101(a)(47)(B). Thus, the Court declines to credit Federal Respondents' assertion that Petitioner is disqualified from membership in the Jacobo-Ramirez Class based upon this order, particularly in light of Respondents' seemingly catch-all detention argument at the tail end of the Return stating: "In this case and based on information obtained from ICE, Petitioners are detained under 8 U.S.C. § 1226(a)." Opp'n at 5.

In addition, the Court finds Federal Respondents did not perform an initial custody determination as to Mr. Monroy-Castillo at the outset of his detention. Petitioner was taken into ICE custody on May 27, 2026—three months ago. See Joint Pet. at 7. This Court instructed Federal Respondents to produce specific records as to Petitioner, including a Form I-286, or alternatively, "certify that, after a diligent search, . . . the record(s) are not in their possession, custody, or control." OSC at 2. Despite claiming in their Return and interrogatory answers that one was served

[1] The Jacobo-Ramirez certified class includes the following people:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District of Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Jacobo-Ramirez, 2026 WL 879799, at *4.

and was "attached" to the filing, the government has failed to produce any Form I-286 as to Mr. Monroy Castillo.[2] See Opp'n at 2; id., Ex. A at 96.

b. *Petitioner Vilorio Hernandez*

The Court finds that Petitioner Vilorio Hernandez is also a member of the Jacobo-Ramirez Class. Petitioner Vilorio Hernandez has set forth sufficient, undisputed facts indicating Class membership. See Joint Pet. at 8. Meanwhile, rather than citing a statutory detention provision or authority that pertains to each Petitioner as this Court ordered, see OSC at 3 (requiring Respondents to file a response "identify[ing] the statutory provision that authorizes *each* Petitioner's detention" and "*explain why that provision applies*") (emphasis added), Federal Respondents assert, without any legal argument whatsoever, that Petitioner is not a Class Member because of his alleged pending state charges. See Opp'n at 3. Moreover, Federal Respondents have failed to attach, or otherwise produce, any court records that would verify the asserted pending charges; to be clear, they have not even produced documents that contain details of the pending charges or their factual basis. Thus, the Court has insufficient information and argument to confirm Federal Respondents' assertion that Petitioner is disqualified from membership in the Jacobo-Ramirez Class based upon these charges, particularly in light of Respondents' argument at the tail end of the Return stating: "In this case and based on information obtained from ICE, Petitioners are detained under 8 U.S.C. § 1226(a)." Opp'n at 5.

In addition, the Court finds Federal Respondents did not perform an initial custody determination as to Mr. Vilorio Hernandez at the outset of his detention. Petitioner was taken into ICE custody on March 19, 2026—five months ago. See Joint Pet. at 8. This Court instructed Federal Respondents to produce specific records as to Petitioner, including a Form I-286, or alternatively, "certify that, after a diligent search, . . . the record(s) are not in their possession, custody, or control." OSC at 2. Based on this record, it is undisputed that Federal Respondents did not provide Mr. Vilorio Hernandez an initial custody determination at the outset of his detention, as the sole Form I-286 mentioned and produced by Federal Respondents was completed and served

[2] Moreover, it is undisputed that Federal Respondents did not provide Mr. Monroy-Castillo an initial custody determination at the outset of his detention. Federal Respondents claim this supposed I-286 Form was completed and served upon Petitioner on August 16, 2026, *i.e.*, *months* after he was detained. See Opp'n, Ex. A at 96.

upon Petitioner on August 16, 2026, *i.e.*, nearly *five months* after he was detained. See Opp'n, Ex. A at 100. Thus, this is not an initial custody determination consistent with the procedures under Section 1226(a) and due process as ordered for the class by the Court in Jacobo-Ramirez. 2026 WL 879799, at *33.

c. *Petitioner Miranda*

The Court next finds that Petitioner Miranda is also a member of the Jacobo-Ramirez Class. Petitioner Miranda has set forth sufficient, undisputed facts indicating Class membership. See Joint Pet. at 9. Meanwhile, rather than citing a statutory provision or authority that pertains to each Petitioner as this Court ordered, see OSC at 3 (requiring Respondents to file a response "identify[ing] the statutory provision that authorizes *each* Petitioner's detention" and "*explain why that provision applies*") (emphasis added), Federal Respondents merely state, without any legal argument whatsoever, that Petitioner is not a Class Member because she has already had a bond hearing. See Opp'n at 2. However, as this Court has already explained: "none of the criteria of class membership hinge on bond hearings," as "a noncitizen is not categorically beyond the Jacobo-Ramirez Class merely because they have been afforded a bond hearing." Ortego-Vivanco v. Rader, No. 2:26-CV-02068-RFB-DJA, 2026 WL 2212508, at *2 (D. Nev. July 31, 2026) (citing Jacobo-Ramirez, 2026 WL 879799, at *4). Thus, the Court rejects Federal Respondents' assertion that Petitioner is disqualified from membership in the Jacobo-Ramirez Class based upon a prior bond hearing.

In addition, the Court finds Federal Respondents did not perform an initial custody determination as to Ms. Miranda the outset of her detention. Petitioner was taken into ICE custody on July 1, 2026—nearly two months ago. See Joint Pet. at 9. This Court instructed Federal Respondents to produce specific records as to Petitioner, including a Form I-286, or alternatively, "certify that, after a diligent search, . . . the record(s) are not in their possession, custody, or control." OSC at 2. Based on this record, it is undisputed that Federal Respondents did not provide Ms. Miranda an initial custody determination at the outset of her detention, as the sole Form I-286 mentioned and produced by Federal Respondents was completed and served upon Petitioner on August 10, 2026, *i.e.*, nearly *six weeks* after she was detained. See Opp'n, Ex. A at 88. Thus, this

is not an initial custody determination consistent with the procedures under Section 1226(a) and due process as ordered for the class by the Court in Jacobo-Ramirez. 2026 WL 879799, at *33.

d. *Petitioner Galaviz-Najera*

The Court next finds that Petitioner Galaviz-Najera is also a member of the Jacobo-Ramirez Class. Petitioner Galaviz-Najera has set forth sufficient, undisputed facts indicating Class membership. See Joint Pet. at 9–10. Meanwhile, rather than citing a statutory provision or authority that pertains to each Petitioner as this Court ordered, see OSC at 3 (requiring Respondents to file a response "identify[ing] the statutory provision that authorizes *each* Petitioner's detention" and "*explain why that provision applies*") (emphasis added), Federal Respondents merely state that Petitioner is not a Class Member because he was granted voluntary departure. See Opp'n at 2. However, Federal Respondents fail to provide any legal argument or authority as to why this would place Petitioner outside the scope of the class. See generally id. Thus, the Court rejects Federal Respondents' assertion that Petitioner is disqualified from membership in the Jacobo-Ramirez Class based upon this order, particularly in light of Respondents' seemingly catch-all argument at the tail end of the Return stating: "In this case and based on information obtained from ICE, Petitioners are detained under 8 U.S.C. § 1226(a)." Opp'n at 5.

In addition, the Court finds Federal Respondents did not perform an initial custody determination as to Mr. Galaviz-Najera at the outset of his detention. Petitioner was taken into ICE custody on May 28, 2026—three months ago. See Joint Pet. at 9. This Court instructed Federal Respondents to produce specific records as to Petitioner, including a Form I-286, or alternatively, "certify that, after a diligent search, . . . the record(s) are not in their possession, custody, or control." OSC at 2. Based on this record, it is undisputed that Federal Respondents did not provide Mr. Galaviz-Najera an initial custody determination at the outset of his detention, as the sole Form I-286 mentioned and produced by Federal Respondents was completed and served upon Petitioner on August 11, 2026, *i.e.*, nearly *three months* after he was detained. See Opp'n, Ex. A at 92. Thus, this is not an initial custody determination consistent with the procedures under Section 1226(a) and due process as ordered for the class by the Court in Jacobo-Ramirez. 2026 WL 879799, at *33.

e. *Petitioner Lopez-Macias*

Lastly, the Court finds that Petitioner Lopez-Macias is also a member of the Jacobo-Ramirez Class. Petitioner Lopez-Macias has set forth sufficient facts indicating Class membership. See Joint Pet. at 10. Meanwhile, rather than citing a statutory provision or authority that pertains to each Petitioner as this Court ordered, see OSC at 3 (requiring Respondents to file a response "identify[ing] the statutory provision that authorizes *each* Petitioner's detention" and "*explain why that provision applies*") (emphasis added), Federal Respondents stated the following arguments specific to class membership: (i.) Petitioner is not a Class Member because he has already received a bond hearing; and (ii.) Petitioner is not a class member because he "is detained under 8 U.S.C. § 1227(a)(1)(B) as nonimmigrant visa overstay." See Opp'n at 3. On the first argument, Federal Respondents fail to provide any legal argument or authority as to why this would place Petitioner outside the scope of the class, just as in Ms. Miranda's case. See generally id. The Court rejects this argument for the same reasons as stated above as to Ms. Miranda. Turning to Federal Respondents' second argument, the Court again reminds Respondents that 8 U.S.C. § 1227(a)(1)(B) *is not a detention authority*. See, e.g., Asihene v. Blanche, *et al.*, No. 2:26-CV-02131-RFB-MDC, 2026 WL 2211264, at *2 (D. Nev. July 31, 2026) ("This is . . . a challenge to the Petitioner's *detention* . . . . [T]he Court need only determine whether the government has asserted a statutory provision that properly authorizes Petitioner's current *detention*. 8 U.S.C. § 1227(a)(1)(B) clearly does not, as it is not a detention authority at all.") (emphasis in original).

While Federal Respondents' argument is largely incoherent as to Petitioner Lopez-Macias, the Court infers, from the invocation of visa overstay language, see Opp'n at 3, that Federal Respondents may be suggesting that Petitioner Lopez-Macias was admitted to the United States, *i.e.*, that he did not enter without inspection or parole as required by the Jacobo-Ramirez class definition. See Jacobo-Ramirez, 2026 WL 879799, at *4 (among the class criteria is a requirement that "DHS alleges or will allege [the Class Member] to have entered the United States without inspection or parole"). However, the Form I-213 and Form I-862 (Notice to Appear) provided by Parties are dispositive on this matter: Petitioner was not admitted, rather, he entered the country without inspection or parole. See Opp'n, Ex. A at 74, 79. The Court adopts this undisputed factual finding from the Parties' evidence and disregards Respondents' contradictory argument.

Thus, the Court rejects Federal Respondents' assertion that Petitioner is disqualified from membership in the Jacobo-Ramirez Class based upon either of these arguments, particularly in light of Respondents' catch-all argument: "In this case and based on information obtained from ICE, Petitioners are detained under 8 U.S.C. § 1226(a)." Opp'n at 5.

In addition, the Court finds Federal Respondents did not perform an initial custody determination as to Mr. Lopez-Macias at the outset of his detention. Petitioner was taken into ICE custody on May 21, 2026—three months ago. See Joint Pet. at 10. This Court instructed Federal Respondents to produce specific records as to Petitioner, including a Form I-286, or alternatively, "certify that, after a diligent search, . . . the record(s) are not in their possession, custody, or control." OSC at 2. Despite their answers to this Court's interrogatories, which state that a Form I-286 was served and an initial custody determination conducted as to Petitioner, the government has failed to produce any Form I-286 as to Mr. Lopez-Macias. See Opp'n, Ex. A at 104.

## II. CONCLUSIONS OF LAW

As members of the Jacobo-Ramirez Class, Petitioners are entitled to the relief afforded to the Class by this Court. In its March 2026 Order, this Court declared that class members "are not subject to detention under § 1225(b)(2)(A)"; instead, "they are subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations," which supply a suite of procedural protections. See Jacobo-Ramirez, 2026 WL 879799, at *33. Moreover, Federal Respondents (and this Court) are obligated to follow the Ninth Circuit's binding judgment in Rodriguez Vazquez v. Bostock, which explicitly rejected the government's interpretation of § 1225(b)(2)(A) and held that noncitizens like Petitioners fall within the detention regime set out in § 1226, not § 1225(b)(2)(A). See Rodriguez Vazquez v. Bostock, --- F.4th ---, 2026 WL 2196424, and *3 (9th Cir. July 30, 2026) ("[W]e conclude that [noncitizens] present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).").

Federal Respondents do not state specific statutory detention arguments as to *any* of these Petitioners. See generally Opp'n. The Court refuses to divine what statutory bases Federal Respondents have, if any, to detain Petitioners beyond what Federal Respondents have stated in

their filings. Cf. Indep. Towers of Wash. v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)) ("Judges are not like pigs, hunting for truffles[.]")). Thus, the Court takes Federal Respondents at their word that the government's position is that these Petitioners are *all* detained under 8 U.S.C. § 1226(a). See Opp'n at 5.

For reasons articulated in Rios-Rodriguez v. Blanche *et al.*, No. 2:26-CV-02117-RFB-MDC, 2026 WL 2280924 (D. Nev. Aug. 7, 2026), which are incorporated by reference herein, the Court finds that Petitioners must be released from government custody. The government's failure to perform initial custody determinations as to Petitioners at the *outset* of their detention runs afoul of § 1226(a) and its implementing regulations, as well as this Court's declaratory judgment. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196–97 (9th Cir. 2022); Jacobo-Ramirez, 2026 WL 879799, at *33; Rios-Rodriguez, 2026 WL 2280924, at *2–3.

The Court further finds Petitioners are entitled to the procedures afforded under § 1226(a) not merely by statute and regulation, but by the Due Process Clause of the Fifth Amendment, for the reasons articulated in this Court's order in Rios-Rodriguez, which the Court incorporates by reference as if fully set forth herein. Specifically, the Court finds Petitioners' detentions without properly-executed and appropriately timed initial custody determinations violate Petitioners' rights to procedural and substantive due process. See Rios-Rodriguez, 2026 WL 2280924 at *3–9.[3]

Therefore, the Court finds Petitioners' detention has been unlawful under both the INA and the Due Process Clause from the moment it began, and immediate release—"the typical remedy" for "unlawful executive detention"—is appropriate here.[4] See Munaf v. Geren, 553 U.S. 674, 693

[3] Because the Court finds that Petitioners' detentions without initial custody determinations violate due process and the INA—and grants Petitioners' requested relief on this basis—it does not reach Petitioners' arguments about their Form I-200's (Warrants for Arrest). See Joint Traverse at 11–12.

[4] Moreover, the Court finds that, to the extent Respondents have afforded Petitioner *some* procedures associated with § 1226, it is clear from the record that Respondents have admittedly not complied with the regulations in full, as required by the statute, its implementing regulations, and this Court's declaratory judgment. See Jacobo-Ramirez, 2026 WL 879799, at *31; see also Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201–1202 (9th Cir. 2022). For example, to the extent that Petitioners Vilorio Hernandez, Miranda, Galaviz-Najera, and Lopez-Macias participated in a "bond hearing," it is unclear what standards or procedures would apply to such a hearing, considering Federal Respondents' continued reliance on Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). See Rios-Rodriguez, 2026 WL

(2008). Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward. Cf. U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to require that, in the event DHS seeks to (re)detain Petitioners under § 1226(a), Federal Respondents must provide them with *pre-deprivation* bond hearings wherein the government must prove, by clear and convincing evidence, that detention is appropriate. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (citation omitted) (reviewing EOIR's compliance with a district court's conditional writ, which ordered EOIR to conduct a bond hearing—as a matter of due process—where the government was required to "show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community."); Gonzalez-Juarez v. Bondi, 137 F.4th 996, 1003 (9th Cir. 2025) (describing Martinez). While the Court does not take this step lightly, it finds it is necessary because of Federal Respondents' egregious violations of the law and Petitioners' rights to date.[5]

## III. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** Petitioners Alcodio Oveniel Monroy-Castillo, Domingo Antonio Vilorio Hernandez, Nancy Alitzel Maynard Miranda, Allan Yoel Galaviz-Najera, and Adolfo Lopez-Macias's Joint Petition for Writs of Habeas Corpus (ECF No. 1) is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents must **RELEASE** Petitioners from detention on their personal recognizance on **August 29, 2026**, between the hours of **12:00 P.M. and 3:00 P.M.** Counsel for Petitioners (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window.

---

2280924 at *3 n.3; *8 n.7; *10 n.9 (discussing how, under Federal Respondents' policies, post-deprivation "bond hearings" are legally untethered and insufficient to cure statutory and due process violations). Respondents do not and have not to this point clarified the statutory authority or due process principles which apply to these so-called "bond hearings," since they are clearly not following the suite of protections and procedures encompassed by Section 1226(a). See Rodriguez Diaz, 53 F.4th at 1196-96, 1202 (describing the "layer[s]" of due process protections and how they work together). One "bond hearing" by itself and without clear standards is insufficient. Moreover, as the BIA as yet to overturn Hurtado in this circuit, it would seem any error at this "bond hearing" would have no remedy.

[5] Immediate release is particularly appropriate given Respondents' lengthy history of non-compliance and defiance in similar cases. See Rios-Rodriguez, 2026 WL 2280924 at *9–13.

**IT IS FURTHER ORDERED** Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioners' liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. If Federal Respondents impose release conditions in violation of this Order, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents must return Petitioners' personal property, including any personal identification and employment authorization documents, **UPON THEIR RELEASE**. If Federal Respondents fail to do so, the Court will consider contempt sanctions against the agency officials responsible.

**IT IS FURTHER ORDERED** Respondents may not re-detain Petitioners during the pendency of their current removal proceedings until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under the INA and its implementing regulations. To the extent the government seeks to detain Petitioners under 8 U.S.C. § 1226(a), it bears the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** the Parties must file a **JOINT STATUS REPORT** by **August 31, 2026** confirming Respondents' compliance with this Order, including: (i) whether Petitioners Alcodio Oveniel Monroy-Castillo, Domingo Antonio Vilorio Hernandez, Nancy Alitzel Maynard Miranda, Allan Yoel Galaviz-Najera, and Adolfo Lopez-Macias have been released; (ii) the dates and times of Petitioners' releases; (iii) compliance with this Court's directives concerning release on personal recognizance; and (iv) the return of each Petitioner's personal property.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioners may move to reopen this case to enforce the judgment without filing a separate case.

**DATED:** August 28, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**